1
2
3
4                         UNITED STATES DISTRICT COURT
5                              DISTRICT OF NEVADA
6                                    * * *
7   ARMINAS WAGNER ENTERPRISES, INC.,      Case No. 2:21-CV-897 JCM (DJA)
8                         Plaintiff(s),                 ORDER
9         v.
10  OHIO SECURITY INSURANCE COMPANY,
11                        Defendant(s).
12
13        Presently before the court is defendant Ohio Security Insurance Company ("Ohio
14  Security")'s renewed motion to dismiss plaintiff Arminas Wagner Enterprises, Inc. ("Arminas
15  Wagner")'s complaint.  (ECF No. 26).  Arminas Wagner filed a response (ECF No. 28), to which
16  Ohio Security replied.  (ECF No. 29).
17        Also, before the court is Ohio Security's request for judicial notice in support of its
18  renewed motion to dismiss (ECF No. 27), which the court GRANTS.
19  I.    **Background**
20        The instant motion arises from an insurance coverage dispute between Arminas Wagner
21  and its insurance company, Ohio Security.  Arminas Wagner alleges that Ohio Security is
22  required to provide insurance coverage for Arminas Wagner's purported business losses
23  sustained by Nevada Governor Stever Sisolak's temporary shuttering of non-essential business in
24  response to the worldwide pandemic caused by COVID-19.
25        Arminas Wagner is a Nevada corporation incorporated by Dr. Arminas Wagner, D.C.
26  (ECF No. 1-2).  Arminas Wagner purchased a commercial insurance policy to protect its
27  business and its employees.  (*Id*. at 3).  The policy is an "all-risk policy;" it covers all risks unless
28  specifically excluded, and it contains a "Virus or Bacteria" exclusion.  (*Id*.).

James C. Mahan
U.S. District Judge

1        On March 20, 2020, Arminas Wagner was forced to shut its doors due to the emergency directives made by Governor Sisolak.  (*Id.* at 4).  On or about April 16, 2020, Arminas Wagner filed a claim on the policy with Ohio Security.  (*Id.* at 5).  Ohio Security denied Arminas Wagner's claim on April 18, 2020.  (*Id.*).

Arminas Wagner claims multiple alternatives for insurance coverage, including business income coverage, extended business income coverage, and extra expense in sections 1(A)(5)(f)–(g), as well as civil authority in section 1(A)(5)(i), and that Ohio Security failed to investigate the claim and consider all available coverages.  (*Id.* at 3–5).  In the April 18, 2020, denial letter, Ohio Security advised Arminas Wagner that it denied Arminas Wagner's claim because there was no direct physical damage to property and because the claim was excluded by the policy's virus exclusion.  (*Id.* at 6).  Arminas Wagner argues that the virus exclusion does not apply here. (*Id.* at 7).

Arminas Wagner avers that the shutdown began on March 20, 2020, and filed its complaint in Nevada state court on March 12, 2021.  (*Id.* at 4 ¶ 17).  Plaintiff asserts seven causes of action: (1) declaratory relief regarding contract rights and obligations; (2) breach of contract; (3) declaratory relief – inapplicability of claims exclusion; (4) breach of implied covenant of good faith and fair dealing; (5) tortious breach of implied covenant of good faith and fair dealing; (6) violation of NRS 686A.310; and (7) bad faith insurance.  (*Id.* at 12–16).

Ohio Security removed this case to federal court on May 7, 2021.  (ECF No. 1).  Ohio Security subsequently moved to dismiss Arminas Wagner's complaint for failure to state a claim. (ECF No. 12).  This court stayed the case pending the Ninth Circuit's decision in *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, No. 21-15367, which was decided on April 15, 2022.  Ohio Security now renews its motion to dismiss.  (ECF No. 26).

**II.    Legal Standard**

A.  12(b)(6) Motion to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell*

James C. Mahan
U.S. District Judge

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not

James C. Mahan
U.S. District Judge

- 3 -

1    unfair to require the opposing party to be subjected to the expense of discovery
2    and continued litigation.

3    *Id.*

4          If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend
5    unless the deficiencies cannot be cured by amendment.  *DeSoto v. Yellow Freight Sys., Inc.*, 957
6    F.2d 655, 658 (9th Cir. 1992).  Under Rule 15(a), the court should "freely" give leave to amend
7    "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of
8    the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the
9    opposing party . . . futility of the amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).
10   The court should grant leave to amend "even if no request to amend the pleading was made."
11   *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks
12   omitted).

13         B.  Judicial Notice

14         Federal Rule of Evidence 201 provides for judicial notice of adjudicative facts.  Under
15   Rule 201(b)(2), the court may "judicially notice a fact that is not subject to reasonable dispute
16   because it . . . can be accurately and readily determined from sources whose accuracy cannot
17   reasonably be questioned.  Fed. R. Evid. 201(b)(2).

18         Rule 201(c)(2) states that the court "must take judicial notice if a party requests it and the
19   court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  The court may take
20   judicial notice of public records if the facts noticed are not subject to reasonable dispute.  *See
21   United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011); *see also Intri-Plex
22   Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citations and quotation
23   marks omitted).

24   **III.   Discussion**

25         The Ninth Circuit's *Circus Circus* decision provides important and material guidance.
26   *Circus Circus* was the first time that the Ninth Circuit analyzed an insurance contract in light of a

James C. Mahan
U.S. District Judge

1   COVID-19 business interruption claim under Nevada Law.[1]  The Ninth Circuit held that, despite

2   the actual presence of coronavirus on Circus Circus's property and compliance with government

3   shut-down orders, Circus Circus's business losses were not caused by direct physical loss or

4   damage.  *Id.*  Circus Circus's argument that the presence of the virus rendered its property

5   uninhabitable improperly "collapses coverage for "direct physical loss' into 'loss of use'

6   coverage." *Id*.  The court found that the loss must be due to a "distinct, demonstrable, physical

7   alteration of the property." *Id*.

8         A.  Breach of contract and declaratory relief

9         Ohio Security asserts there is no coverage under the policy for the losses alleged in the

10   claim, thus dooming Arminas Wagner's claims for breach of contract and declaratory relief.

11   (ECF No. 26).  In Nevada, "[t]he starting point for the interpretation of any contract, including

12   insurance policies, is with its plain language." *WP6 Rest. Mgmt. Grp. LLC v. Zurich Am. Ins.*

13   *Co.*, No. 2:20-cv-1506-KJD-NJK, 2022 WL 980248, at \*7 (D. Nev. Mar. 31, 2022).

14         An insurance policy "is enforced according to its terms to effectuate the parties' intent,"

15   viewing its provisions "in their plain, ordinary[,] and popular sense." *Levy Ad Grp., Inc. v.*

16   *Chubb Corp.*, 519 F. Supp. 3d 832, 836 (D. Nev. 2021), *aff'd sub nom. Levy Ad Grp., Inc. v.*

17   *Fed. Ins. Co.*, No. 21-15413, 2022 WL 816927, at \*1 (9th Cir. Mar. 17, 2022) (citing *Siggelkow*

18   *v. Phoenix Ins. Co.*, 846 P.2d 303 (1993)).

19         Any limitation in policy coverage must "clearly and distinctly communicate[ ] to the

20   insured the nature of the limitation."  *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, 525 F.

21   Supp. 3d 1269, 1274 (D. Nev. 2021), *aff'd*, No. 21-15367, 2022 WL 1125663 (9th Cir. Apr. 15,

22   2022) (citing *Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380,

23   1382 (1984)).  "To determine whether a term is ambiguous, it should not be viewed standing

24   alone, but rather in conjunction with the policy as a whole 'in order to give a reasonable and

25   harmonious meaning and effect to all its provisions.'" *Fourth St. Place v. Travelers Indem. Co.*,

---

27   [1] The Ninth Circuit also recently issued opinions relating to three COVID-19 business
interruption cases analyzing California and Arizona law. *See Mudpie, Inc. v. Travelers Case. Ins.*
28   *Co. of Am.*, 15 F.4th 885 (9th Cir. 2021); *Selane Prods., Inc. v. Cont'l Cas. Co.*, 2021 WL
4496471 (9th Cir. Oct. 1, 2021); *Chattanooga Professional Baseball LLC v. Nat'l Cas. Co.*,
2022 WL 171936 (9th Cir. Jan. 19, 2022).

270 P.3d 1235, 1239 (Nev. 2011).  Ultimately, the interpretation of an insurance policy is a question of law for the court.  *Levy,* 519 F. Supp. 3d at 836.

     *i.* *Business income, extended business income, and extra expense*

   Under the policy, coverage for business income, extended business income, and extra expense is limited to loss or damage to property caused by "direct physical loss."  (ECF No. 26 at 8).  This court has determined that policy language requiring "direct physical loss" excludes coverage for claims that contain no plausible allegations of demonstrable, physical alteration, or change to the condition of a property.  *Circus Circus,* 525 F. Supp. 3d at 1269; *See Levy*, 519 F. Supp. 3d at 836 (concluding that a policy's business income provisions did not cover economic losses incurred by COVID-19 closures because the policy required physical losses or damage to premises).

   Here, Arminas Wagner argues that the *Circus Circus* decision is not applicable or binding.  (ECF No. 28).  Arminas Wagner improperly relies on the "property damage" definition in section II "Liabilities," rather than section I "Property" of the policy, where business income, extended business income, and extra expense coverage are located.  (ECF No. 26-2).

   The relevant language, found in section I, requires "direct physical loss."  (*Id.*).  Thus, *Circus Circus* is controlling.  525 F. Supp. 3d 1269.

   The presence of COVID-19 does not alter property and is not a physical loss.  Arminas Wagner fails to allege any "direct physical loss" or distinct, demonstrable, physical alteration to the insured premises that might trigger this coverage.  *See Circus Circus*, 525 F. Supp. 3d at 1274; (ECF No. 1-1).

     *ii.* *Civil authority coverage*

   Similarly, Arminas Wagner is not entitled to the policy's civil authority coverage.  Civil authority coverage applies when a civil institution prohibits access to the insured premises as a result of "dangerous physical conditions resulting from [nearby] damage or continuation of the Covered Cause of Loss that caused the damage."  (ECF No. 26-2).  Like business income, extended business income, and extra expense coverage, "Covered Cause of Loss" requires "direct physical loss."  (*Id.*).

James C. Mahan
U.S. District Judge

1    Thus, any civil authority order must be issued in response to physical alteration of

2    property, which Arminas Wagner fails to allege.  *See Circus Circus*, 525 F. Supp. 32 at 1274;

3    (ECF No. 1-1).  Arminas Wagner alleges only that it was temporarily curtailed from using its

4    office for its full intended business purposes because Governor Sisolak's order.  (ECF No. 1-2 at

5    ¶ 45–46).

6        iii.    *The virus exclusion*

7    Arminas Wagner argues that the virus exclusion is not applicable here because Arminas

8    Wagner's claims are not for personal injury claims for physical distress, illness, or disease

9    caused by a virus or bacteria.  (ECF No. 28 at 21).   Further, Arminas Wagner asserts that

10   Governor Sisolak's order, not the virus, caused its losses.  (ECF No. 1-2 ¶¶ 17-26, 77a, 80).

11   Ohio Security avers that even if Arminas Wagner had alleged direct physical loss or

12   damage to its property, the policy's virus exclusion precludes coverage of the claim.  (ECF No.

13   26).  The virus exclusion precludes "all loss or damage caused directly or indirectly by … [a]ny

14   virus … that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 3).  It

15   further precludes coverage "regardless of any other cause or event that contributes concurrently

16   or in any sequence to the loss," and "whether or not the loss event results in widespread

17   damage." (*Id.*).

18   Courts in this district have found that such language "contemplates situations where a

19   virus indirectly contributes to or worsens a loss," and that businesses cannot reasonably deny that

20   the virus and its spread contributed to their losses.  *Project Lion LLC v. Badger Mut. Ins. Co.*,

21   No. 2:20-cv-00768-JAD-VCF, 2021 WL 2389885, at *4 (D. Nev. May 19, 2021) (quoting *Boxed*

22   *Foods Co., LLC v. Cal. Cap. Ins. Co.*, 497 F. Supp. 3d 516, 522–23 (N.D. Cal. 2020)).

23   Even assuming, *arguendo*, Arminas Wagner would otherwise be entitled to coverage, the

24   virus exclusion would apply.  Arminas Wagner does not allege loss for any reason independent

25   of COVID-19.  (*See generally* ECF No. 1-2).

26   Thus, Ohio Security did not breach its contract as a matter of law.  It had no duty to cover

27   the claim under the policy.  The terms of the contract are clear and unambiguous.  Arminas

28

**James C. Mahan**
**U.S. District Judge**

1   Wagner's breach of contract claim is dismissed.  Accordingly, Arminas Wagner's claims for

2   declaratory relief are dismissed.

3       B.   Breach of implied covenant of good faith and fair dealing, bad faith, and Nevada

4           unfair settlement practices

5       Arminas Wagner also asserts claims for: (1) breach of the implied covenant of good faith

6   and fair dealing; (2) tortious breach of implied covenant of good faith and fair dealing; (3)

7   violation of NRS 686A.310; and (4) bad faith insurance.  (ECF No. 1-1 at 17-22).

8           i.   Implied covenant of good faith and fair dealing

9       "It is well established that all contracts impose upon the parties an implied covenant of

10  good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the

11  disadvantage of the other."  *Nelson v. Heer*, 163 P.3d 420, 426–27 (Nev. 2007).  The purpose of

12  the claim is to prevent a contracting party from "deliberately countervan[ing] the intention and

13  spirit of the contract."  *Morris v. Bank of America Nevada*, 886 P.2d 454, 457 (Nev. 1994)

14  (internal quotation marks omitted).

15      To state a claim for breach of the implied covenant of good faith and fair dealing, a

16  plaintiff must allege (1) plaintiff and defendant were parties to a contract; (2) defendant owed a

17  duty of good faith the plaintiff; (3) defendant breached that duty by performing in a manner that

18  was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were

19  denied.  *See Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919 (Nev. 1991).

20      A contractual breach of the implied covenants of good faith and fair dealing occurs

21  "[w]here the terms of a contract are literally complied with but one party to the contract

22  deliberately countervenes the intention and spirit of the contract."  *Hilton Hotels Corp. v. Butch

23  Lewis Prods.*, Inc., 808 P.2d 919, 922–23 (Nev. 1991); *see Shaw v. CitiMortgage, Inc.*, 201 F.

24  Supp. 2d 1222, 1252 (D. Nev. 2016).

25      Under Nevada law, breach of the implied covenant of good faith and fair dealing case

26  gives rise to a tort when a special relationship exists between the parties to the contract, such as

27  the relationship between an insurer and an insured.  *Ins. Co. of the West v. Gibson Tile Co., Inc.*,

28  134 P.3d 698, 702 (Nev. 2006).

James C. Mahan
U.S. District Judge

Ohio Security literally complied with the contract; it had no duty to cover Arminas Wagner's losses.  The language of the policy is indicative of the parties' intentions—Arminas Wagner's "expectations to receive certain benefits consistent with the spirit of the [p]olicy" were not justifiable.  (*See* ECF No. 1-2).  Ohio Security had a reasonable basis to deny Arminas Wagner's claim, and thus did not act unfaithful to the purpose of the contract.

### ii.    Bad faith and NRS 686A.310

"To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage."  *WP6*, 2022 WL 980248, at *7 (citing *Powers v. United Services Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998)).  "And, while an allegation of a failure to investigate is relevant to a bad faith failure to pay an insurance claim, 'the failure to investigate is not itself bad faith.'"  *Id.* (quoting *Hart v. Prudential Prop. & Cas. Ins. Co.*, 848 F. Supp. 900, 905 (D. Nev. 1994)).

Finally, bad faith requires the "unreasonable denial or delay in payment of a valid claim."  *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996).  "Bad faith involves an actual or implied awareness of the absence of a reasonable basis for denying benefits of the policy."  *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354–55 (Nev. 1986) (citation omitted).  Thus, a plaintiff must show that (1) the insurer denied or refused to pay the insured's claim, (2) that it objectively acted "unreasonably" in doing so, and (3) it acted "with knowledge that there is no reasonable basis for its conduct."  *Potter*, 912 P.2d at 272.

For Arminas Wagner to establish a prima facie claim for bad faith, Arminas Wagner must show that Ohio Security had an obligation to pay the insurance claim.  *See id.*  Ohio Security did not have an obligation to pay the insurance claim and thus did not act unreasonably in denying the claim, so Arminas Wagner's cause of action for bad faith fails as a matter of law.

Arminas Wagner's NRS 686A.310 claim rests on allegations that Ohio Security (1) misrepresented pertinent facts or insurance policy provisions in violation of NRS 686.310(a), (2) failed to adopt and implement reasonable standards for the prompt investigation and processing

James C. Mahan
U.S. District Judge

of claims in violation of NRS 686.310(c), and (3) failed to pay Wagner's claim even though liability was "reasonably clear" in violation of NRS 686A.310(e).  (ECF No. 1-2).

Arminas Wagner's NRS 686A.310(a) theory fails because the alleged misrepresentations are based on the unambiguous language of the policy.  Ohio Security's statements that Arminas Wagner is not entitled to coverage are not misrepresentations because they are true.  *See* discussion *supra*.  Further, Arminas Wagner's NRS 686A.310(c) claim fails because Ohio Security did timely respond to the claim.  (*See* ECF No. 1-2 ¶ 31).  Finally, Arminas Wagner's NRS 686A.310(e) claim falls flat because liability did not exist, let alone was "reasonable clear." *See* NRS 686A.310(e).

Accordingly, the court dismisses plaintiff's claims for: (1) breach of the implied covenant of good faith and fair dealing; (2) tortious breach of implied covenant of good faith and fair dealing; (3) violation of NRS 686A.310; and (4) bad faith insurance.

C.  Leave to Amend

Although "[t]he court should freely give leave when justice so requires," the court is not obligated to do so.  Fed. R. Civ. P. 15(a)(2).  The court need not give leave to amend where "it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, "leave to amend may be denied if it appears to be futile or legally insufficient." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citing *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986)).  The standard to be applied when determining the legal sufficiency of a proposed amendment is identical to that on a motion to dismiss for failure to state a claim.  *Id.*

Determining that Arminas Wagner's seven claims for relief fail as a matter of law, the court finds that granting plaintiff leave to amend would be futile.  The plain language of the policy prevents plaintiff from successfully bringing an insurance claim.  There are no potential amendments that could rescue plaintiff's legal claims.

. . .

. . .

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Ohio Security's renewed motion to dismiss (ECF No. 26) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's complaint be, and the same hereby is DISMISSED, with prejudice.

The clerk is instructed to enter judgment and close the case.

DATED February 17, 2023.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 11 -